FILED

IN THE

UNITED STATES DISTRICT COURT

2021 JAN 14 PM 2:56

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIA ALEXANDRA ROGACHEVA,<br><br>Defendant. | 6:21-CV-102-ORL-40LRH<br><br>Case No: 6:17-cr-205-PGB-LRH-6 |

## PETITION TO VACATE, SET ASIDE, OR CORRECT CONVICTION, JUDGMENT, AND SENTENCE UNDER 28 U.S.C. § 2255 OR, ALTERNATIVELY, PETITION FOR WRIT OF ERROR CORAM NOBIS[1]

1. Name and location of court which entered the judgment of conviction under attack:

   Middle District of Florida, Orlando Division

2. Date of judgment of conviction: February 21, 2018

3. Length of sentence: time served

4. Nature of offense involved: marriage fraud

---

[1] The writ of error coram nobis "provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *United States v. Kwan*, 407 F.3d 1005, 1009-1010 (9th Cir. 2005) (overruled on other grounds) (quotation marks and citation omitted). *See also United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). Ineffective assistance of counsel can serve as the basis for a petition for writ of error coram nobis for individuals who are no longer in federal custody and/or who cannot seek relief under § 2255. *See Kwan*, 407 F.3d at 1009-1011. *See also Carbo v. United States*, 581 F. 2d 91, 92-93 (5th Cir. 1978).

Page 1 of 16

5. What was your plea? (Check one)

    (a) Not guilty      (__)
    (b) Guilty      (X)

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: N/A

6. Kind of trial: N/A

7. Did you testify at the trial? N/A

8. Did you appeal from the judgment of conviction?

    Yes (__)      No (X)

9. If you did appeal, answer the following:

    (a) Name of court: N/A

    (b) Result: N/A

    (c) Date of result: N/A

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?

    Yes (__)      No (X)

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court: N/A

        (2) Nature of proceeding: N/A

        (3) Grounds raised: N/A

        (4) Did you receive an evidentiary hearing on your petition, application or motion? N/A

        (5) Result: N/A

        (6) Date of result: N/A

(b) As to any second petition, application or motion give the same information:

    (1) Name of court: N/A

    (2) Nature of proceeding: N/A

    (3) Grounds raised: N/A

    (4) Did you receive an evidentiary hearing on your petition, application or motion? N/A

    (5) Date of result: N/A

(c) As to any third petition, application or motion, give the same information:

    (1) Name of court: N/A

    (2) Nature of proceeding: N/A

    (3) Grounds raised: N/A

    (4) Did you receive an evidentiary hearing on your petition, application or motion? N/A

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion? N/A

    (1) First petition, etc. N/A
    (2) Second petition, etc. N/A
    (3) Third petition, etc. N/A

If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not: N/A

12. State *concisely* every ground on which you claim that you are being held unlawfully.

Summarize *briefly* the *facts* supporting each ground.

**A.  Ground one: Ms. Rogacheva's guilty plea was involuntary and/or defense counsel rendered ineffective assistance of counsel by failing to advise her regarding available defenses.**

Ms. Rogacheva's guilty plea was involuntary and/or defense counsel rendered ineffective assistance of counsel by failing to advise her regarding available defenses. As a result, Ms. Rogacheva was denied her right to make a knowing, intelligent, and voluntary decision regarding her guilty plea (in violation of the Fifth Amendment to the Constitution) and was denied her right to effective assistance of counsel (in violation of the Sixth Amendment to the Constitution).  But for counsel's ineffectiveness, the result of the proceeding would have been different (i.e., Ms. Rogacheva would not have entered a guilty plea in this case).

In this case, the Government alleged that Ms. Rogacheva entered into a fraudulent marriage with William Matthew Tex Price on January 14, 2016. However, as explained below, the facts in this case demonstrate that Ms. Rogacheva has several viable defenses to the charge in this case.

**1.  Ms. Rogacheva did not take any steps to obtain citizenship/immigration status based on her marriage to Mr. Price.**

Between January of 2016 and June of 2016, Ms. Rogacheva *did not take any steps* to obtain citizenship/immigration status based on her marriage to Mr. Price. This alone establishes a viable defense that for whatever reason Ms. Rogacheva married Mr. Price, it was not for the purpose of fraudulently obtaining citizenship or immigration status.[2]

---

[2] Undersigned counsel notes that the Department of Homeland Security "Report of Investigation" erroneously states that "[i]t is believed [that] ROGACHEVA . . . divorced PRICE prior to filing [an] application[] with" the United States Citizenship and Immigration Services ("USCIS"). Contrary to this statement in the report, Ms. Rogacheva did not

In the Statement of Facts, the Government references that Ms. Rogacheva and Mr. Price "never lived together as husband and wife or consummated the purported marriage in any manner." (Doc 105 - Pg 13). These facts are irrelevant to the question of whether Ms. Rogacheva engaged in criminal marriage fraud – and, in fact – consideration of such facts violates Ms. Rogacheva's constitutional rights. Pursuant to the "doctrine of marital privacy" and other public policy, privacy, and constitutional considerations, "married couples are free to structure their marriages in almost any way they desire: they can live together or apart, they can use the same surname or different names, they can have sexual relations or abstain, they can be monogamous or adulterous, they can pool their finances or keep separate bank accounts, and they can be supportive or destructive of each other's aspirations." Kerry Abrams, *Immigration Law and the Regulation of Marriage*, 91 Minn. L. Rev. 1625, 1679 (2007) (citing *Griswold v. Connecticut*, 381 U.S. 479, 485-486 (1965)). *See also McGuire v. McGuire*, 59 N.W.2d 336 (Neb. 1953) (laying the groundwork for "doctrine of marital privacy"). As explained by the Ninth Circuit Court of Appeals, "[a]liens cannot be required to have more conventional or more successful marriages than citizens." *Bark v. INS*, 511 F.2d 1200, 1201-1202 (9th Cir. 1975). *See also Cho v. Gonzales*, 404 F.3d 96, 102-103 (1st Cir. 2005) (emphasizing that marriages can be unconventional or can have various motivations without being sham marriages). Hence, the fact that Ms. Rogacheva never lived

---

"divorce" Mr. Price – she annulled her marriage after learning that he was already married. Morever, the paperwork that Ms. Rogacheva filed with USCIS was filed more than one year *after* Ms. Rogacheva annulled her marriage. It appears that the false information contained in the report was the basis for Ms. Rogacheva's indictment, and undersigned counsel questions whether she would have even been indicted but for this false information. Notably, another person named in the report (Abdumajid Abdurakhmanov) had his marriage annulled and – to the best of undersigned counsel's knowledge – he has never been charged.

with Mr. Price does not establish that she engaged in criminal marriage fraud.[3] In contrast, the fact that she never took any steps to obtain citizenship/immigration status based on her marriage to Mr. Price *does* establish a viable defense.[4] Defense counsel, however, completely failed to discuss this viable defense with Ms. Rogacheva.

   2.   **Ms. Rogacheva annulled her marriage many months before she was charged in this case.**

After Ms. Rogacheva learned that Mr. Price was still married to Svetlana Vladimirovna Shakhramanyan at the time that he married Ms. Rogacheva, Ms. Rogacheva had her marriage to Mr. Price annulled in June of 2016.[5] Thus, by the time the indictment was filed in this case (August of 2017), Ms. Rogacheva had long since annulled the marriage in question. Black's Law Dictionary defines "annulment" as "to make void" and states that "[a]n 'annulment' differs from a divorce in that a divorce terminates a legal status, whereas *an annulment establishes that a marital status never existed.*" Black's Law Dictionary at 91 (6th Ed.) (citing *Whealton v. Whealton*, 432 P.2d 979 (Cal. 1967)) (emphasis added). Ms. Rogacheva's annulment also establishes a valid defense to the charge in this case, but – again – defense counsel failed to advise Ms. Rogacheva of this defense.

---

[3] Undersigned counsel notes that after Ms. Rogacheva married Mr. Price, Mr. Price left his child in her care.

[4] Notably, all of the similarly-charged codefendants in this case had an adjustment of status petition filed or stored on Denis Yakovlev's computer. *But no such petition existed* in Ms. Rogacheva's case.

[5] Mr. Price's marriage to Ms. Shakhramanyan also creates the defense of legal impossibility. Because Mr. Price was married to Ms. Shakhramanyan when he married Ms. Rogacheva, Ms. Rogacheva would not have been eligible for any immigration status based on her marriage to Mr. Price (because someone who is already married cannot confer an immigration status to a second wife by marrying the second wife).

### 3. Violation of the Vienna Convention.

Article 36 of the Vienna Convention guarantees a foreign national the right to have her home country's consular office notified when she is detained. *See* Vienna Convention on Consular Relations, art. 36, Apr. 24, 1963, 21 U.S.T. 77. In this case, the Government failed to comply with Article 36 when it detained Ms. Rogacheva (i.e., her home country's consular office was *not* notified when she was detained).[6] While it may be debatable what remedy results from this violation (i.e., dismissal of the indictment, etc.), defense counsel failed to discuss this matter with Ms. Rogacheva and – as explained below – Ms. Rogacheva's subsequent plea was clouded by the Article 36 violation and her improper detention.

All of the defenses set forth above were viable defenses in this case. However, defense counsel – who was appointed in this case – never discussed any of these defenses with Ms. Rogacheva. Ms. Rogacheva was detained/arrested in September of 2017. After she was arrested, she met defense counsel for the first time in court on September 26, 2017. During that meeting, defense counsel did not take the time to discuss the facts of the case with Ms. Rogacheva. Defense counsel next came into contact with Ms. Rogacheva at the jail at the end of October 2017. During this meeting, although Ms. Rogacheva attempted to explain the facts set forth above to defense counsel, defense counsel told Ms. Rogacheva that she did not believe she had any viable defense to the charge in this case and that she should enter a guilty plea in an effort to avoid a prison sentence. Based on defense counsel's advice,

---

[6] Exhibit 1 to this petition is a communication from the Russian consular office in Washington, D.C., confirming that the office was *not* notified when Ms. Rogacheva was detained.

Ms. Rogacheva subsequently – and reluctantly – agreed to enter a plea.[7] The final time Ms. Rogacheva met with defense counsel was on the date of the November 29, 2017, plea hearing. At no time during any of these meetings did defense counsel ever go over the defenses set forth above. Again, at all times, defense counsel informed Ms. Rogacheva that she had no viable defenses in this case.[8]

The Sixth Amendment right to counsel implicitly includes the right to effective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970); *Chatom v. White,* 858 F.2d 1479, 1484 (11th Cir. 1988). The familiar test utilized by courts in analyzing ineffective assistance of counsel claims is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

*Strickland v. Washington,* 446 U.S. 668, 687 (1984).

The two-part *Strickland* test applies to challenges of guilty/no contest pleas based on ineffective assistance of counsel. *See Hill v. Lockhart,* 474 U.S. 52, 58 (1985). Pursuant to

---

[7] Ms. Rogacheva was presented with the plea agreement less than twelve hours prior to her acceptance of the agreement.

[8] Undersigned counsel further notes that because the Government failed to comply with Article 36 of the Vienna Convention – and but for this violation, the consulate would have provided adequate representation for Ms. Rogacheva. At the time Ms. Rogacheva accepted the plea, she was incarcerated and had no contact with the outside world – including her parents.

*Hill*, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 57.

Counsel has a duty to conduct reasonable pretrial investigation, and the standard for evaluating counsel's pre-trial investigation is reasonableness under the circumstances. *See Futch v. Dugger*, 874 F. 2d 1483 (11th Cir. 1989), citing *Mitchell v. Kemp*, 762 F. 2d 886 (11th Cir. 1985), and *Foster v. Dugger*, 823 F. 2d 402 (11th Cir. 1987); *Brown v. State*, 892 So. 2d 1119 (Fla. 2d DCA 2004), citing *Squires v. State*, 558 So. 2d 401 (Fla. 1990). Counsel must take reasonable steps to investigate all avenues of a defense, and the failure to conduct reasonable pretrial investigation may in itself amount to ineffective assistance of counsel. *See United States v. Tucker*, 716 F. 2d 576 (9th Cir. 1983).

In *Wiggins v. Smith*, 539 U.S. 510, 523-524 (2003), the Supreme Court articulated its concern with regard to claims involving an attorney's failure to investigate his or her case:

> [O]ur principal concern in deciding whether [counsel] exercised 'reasonable professional judgment' is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable.

The *Wiggins* Court explained that "strategic choices made after [a] thorough investigation of [the] law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 522-523. *See also McQueen v. Swenson*, 498 F. 2d 207 (8th Cir. 1974) (stating the most able and competent

lawyer in the world cannot render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justiciable defense); *Rummell v. Estelle*, 590 F. 2d 103 (5th Cir. 1979) (stating investigation and preparation are the keys to effective representation, and counsel has a duty to interview potential witnesses and make an independent examination of the facts, circumstances, pleadings, and laws in a criminal case).

A guilty/no contest plea is not entered knowingly, intelligently, and voluntarily if the defendant does not have knowledge of viable defenses to the crime. *See Ivy v. Caspari*, 173 F.3d 1136, 1143 (8th Cir. 1999) ("In addition to the failure of the trial court and counsel to explain fully the elements of the offense to which Ivy pleaded guilty, other circumstances cast doubt on the voluntariness of Ivy's plea. . . . Counsel's failure to advise Ivy of the possible defense of mental illness and his failure to bring the report to the trial court's attention are additional indicia of his ineffective assistance and provide additional grounds for the district court's finding that Ivy's plea was not knowingly and voluntarily entered."); *McGraw v. United States*, 106 F.3d 391, 1997 WL 34431 at *1 (4th Cir. 1997) (unpublished) ("'Because a guilty plea is valid only if it represents a knowing and voluntary choice among alternatives,' defense counsel has a duty to investigate possible defenses and to advise the defendant so that he can make an informed decision.") (quoting *Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996)).

"Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (*citing Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). A criminal defendant considering whether to plead guilty is entitled to the informed, professional advice of his counsel. *See Purdy v. United States*, 208 F.3d 41,

44-45 (2d Cir. 2000). "The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision." *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996) (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases (1988)).[9] "An accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea" because a plea of guilty is "valid only if made intelligently and voluntarily." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).

In this case, if defense counsel had properly investigated Ms. Rogacheva's case and properly advised her regarding potential defenses, Ms. Rogacheva would *not* have pleaded guilty but instead would have proceeded to trial and pursued these defenses. At the time that Ms. Rogacheva entered her guilty plea, she was unaware of any of the defenses set forth above (i.e., she was aware of the facts, but she was unaware that those facts established viable legal defenses to the charge in this case). Ms. Rogacheva did not grow up in this country and was not familiar with the American legal system when she was detained. She was relying on the advice of her appointed counsel – and her counsel was ineffective for

---

[9] As the Supreme Court explained in *Hill*:

> The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . . Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Hill*, 474 U.S. at 56-57 (citations omitted).

failing to properly advise her about the available defenses in this case. Ms. Rogacheva is not asking the Court to dismiss the indictment – she is simply asking the Court to allow her to withdraw her plea so that she can proceed to trial and exercise her right to a jury trial, have her day in court, and allow the jury to consider and decide whether the Government can prove the charge beyond a reasonable doubt (after considering Ms. Rogacheva's defense(s)).

Accordingly, applying the *Strickland/Hill* standard to this case, defense counsel was ineffective for failing to advise Ms. Rogacheva regarding available defenses in this case. Counsel's failure fell below the applicable standard of performance. Absent counsel's ineffectiveness in the instant case, the result of the proceeding would have been different (i.e., Ms. Rogacheva would not have entered a guilty plea and would have insisted on going to trial) and/or counsel's ineffectiveness affected the fairness and reliability of the proceeding, thereby undermining any confidence in the outcome. In light of the facts alleged in this petition, it would be a manifest injustice to maintain Ms. Rogacheva's conviction and/or the facts of this case establish plain error. Ms. Rogacheva requests an evidentiary hearing on this claim and she thereafter seeks to withdraw her guilty plea.

13. If the ground listed in 12 was not previously presented, give your reason for not presenting it:

<u>The proper vehicle to assert an ineffective assistance of counsel claim is by way of a § 2255 motion in the district court, where the requisite factual record can be developed. See, e.g., United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (citing United States v. Khoury, 901 F.2d 948, 969 (11th Cir. 1990)).</u>

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

Yes (_)    No (X)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing: N/A

    (b) At arraignment and plea: Amanda Regina Jacobson, Suite A, 351 East SR 434, Winter Springs, Florida 32708

    (c) At trial: N/A

    (d) At sentencing: Ms. Jacobson

    (e) On appeal: N/A

    (f) In any post-conviction proceeding: undersigned counsel

    (g) On appeal from any adverse ruling in a post-conviction proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?

    Yes (_)   No (X)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

    Yes (_)   No (X)

    (a) If so, give name and location of court which imposed sentence to be served in the future: N/A

    (b) And give date and length of sentence to be served in the future: N/A

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? N/A

18. Timeliness of Motion: Ms. Rogacheva acknowledges that this pleading is being filed beyond the one-year § 2255 deadline. However, Ms. Rogacheva relies upon the equitable tolling doctrine to excuse this time bar. Following the entry of the plea in this case, Ms. Rogacheva questioned defense counsel as to whether any additional legal avenues existed in her case, and defense counsel specifically told Ms. Rogacheva that she had no additional/available options to challenge her conviction. Defense counsel was wrong – Ms. Rogacheva had the right to file a § 2255 motion. But for defense counsel's misadvice, Ms. Rogacheva would have timely pursued this motion. It was only in recent months that Ms. Rogacheva discovered that – contrary to defense counsel's advice – she did, in fact, have a legal avenue to challenge her

conviction. In light of these facts, Ms. Rogacheva is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010). Defense counsel's extraordinary negligence/gross negligence amounts to an extraordinary circumstance that allows for equitable tolling in the instant case. It would be a manifest injustice to prevent Ms. Rogacheva from having her claims considered on the merits – especially in light of the viable defenses that exist in this case.

Alternatively, Ms. Rogacheva seeks error coram nobis relief.

19. What relief do you request from this Court? To withdraw the guilty plea entered in this case.

Wherefore, Ms. Rogacheva prays that the Court will grant her relief to which she may be entitled in this proceeding.

Respectfully submitted,

/S/ Michael Ufferman
MICHAEL UFFERMAN
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, Florida 32308
(850) 386-2345/fax (850) 224-2340
FL Bar No. 114227
Email: ufferman@uffermanlaw.com

Counsel for Ms. **ROGACHEVA**

## OATH

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2021:

/s/ Michael Ufferman on behalf of Maria Alexandra Rogacheva[10]

Ms. Rogacheva's affidavit is attached to this petition (Exhibit 2).

---

[10] Pursuant to the Advisory Committee Notes to Rule 2 of the Rules Governing Section 2255 Cases (2004 Amendments), undersigned counsel is acting on behalf of Ms. Rogacheva as a "next of friend": "[U]nder the amended rule the motion may be signed by the movant personally or by someone acting on behalf of the movant, assuming that the person is authorized to do so, for example, an attorney for the movant."

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing instrument has been furnished to:

Office of the United States Attorney
Suite 3100
400 West Washington Street
Orlando, Florida 32801

by electronic CM/ECF delivery this 13th day of January, 2021.

/S/ Michael Ufferman
MICHAEL UFFERMAN
Michael Ufferman Law Firm, P.A.
2022-1 Raymond Diehl Road
Tallahassee, Florida 32308
(850) 386-2345/fax (850) 224-2340
FL Bar No. 114227
Email: ufferman@uffermanlaw.com

Counsel for Ms. **ROGACHEVA**